IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| THE BRINK'S COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:20-cv-520-HEH |
| ) | |
| CHUBB EUROPEAN GROUP ) | |
| LIMITED, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
**(Denying Motion for Remand)**

This matter is before the Court on The Brink's Company's ("Plaintiff") Motion for Remand (ECF No. 8), filed on July 14, 2020. This case was removed from the Circuit Court for the County of Henrico on July 9, 2020. (ECF No. 1.) Plaintiff contests removal, and claims that there is not diversity jurisdiction in this case because Chubb European Group Limited ("Chubb") and Certain Underwriters at Lloyd's, London Subscribing to Policy No. B091/L11831111 ("Underwriters," collectively "Defendants") have not adequately pled their citizenship. The parties have filed memoranda in support of their respective positions and the Court heard oral argument on the Motion on September 30, 2020. The Motion is ripe for the Court's review. For the foregoing reasons, the Court will deny the Motion for Remand.

**I.   BACKGROUND**

As set forth in the Complaint, Plaintiff is a cash management company based in Henrico, Virginia. (Notice of Removal, ECF No. 1, Ex. A, ¶ 8.) In 2018, Plaintiff sought

specialty insurance and obtained comprehensive crime insurance through the insurance marketplace Lloyd's, London ("Lloyd's"). (*Id.* ¶ 10.)

Lloyd's is not an insurance company; it is an entity that controls a specialty insurance marketplace, functioning similarly to the New York Stock Exchange. *Allen v. Lloyd's, London*, No. 3-cv-522–REP, 1996 WL 490177, at *2 (E.D. Va. Aug. 23, 1996). The market was originally (and still is in part) funded by wealthy individuals who provide capital to underwrite insurance policies for a variety of risks. *Id.* at *2–3. These individuals are members of Lloyd's and are called "Names," and, over time, Names have become a mixture of business entities and individuals. *Id.* at *3. Names are grouped into syndicates, which can also sometimes form groups, to underwrite a policy or risk. *Id.* Generally, Names are not involved in day-to-day management of a syndicate; instead, a manager or agent is appointed to monitor daily operations. *Id.*

Plaintiff obtained primary coverage for its comprehensive crime insurance through Chubb and first excess comprehensive insurance coverage through the Underwriters for the period between April 1, 2018 and April 1, 2019. (ECF No. 1, Ex. A, ¶¶ 10–11.) Together, the policies covered Plaintiff in an amount up to $50,000,000.00 (a $10,000,000.00 policy limit on the primary coverage and $40,000,000.00 of excess coverage through the excess comprehensive policy). (*Id.* ¶ 12.) During the 2018 coverage period, Plaintiff discovered that one of its employees, Roiland Gotiangco ("Gotiangco"), defrauded Plaintiff by modifying, corrupting, and erasing confidential data in Plaintiff's systems dating back as far as 2016. (*Id.* ¶¶ 14-15.) As a result of this scheme, Plaintiff alleges that Gotiangco fraudulently transferred $1,220,078.27, leading

2

to a federal investigation and subsequent indictment for wire fraud and identity theft. (*Id.* ¶¶ 18–21.)

Thereafter, Plaintiff contends it notified Chubb in September 2018 of the theft and warned in October 2018 that further investigation may uncover additional losses. (*Id.* ¶ 22.) Chubb allegedly told Plaintiff that the additional losses would "fall within the definition of a single claim and would 'attach back' to this notification." (*Id.*) Plaintiff employed KPMG to perform a forensic accounting investigation. (*Id.* ¶¶ 23–25.) Based upon the results of KPMG's investigation, Plaintiff asserts that it suffered a loss of $21,725,000.00 from accounts lost due to Gotiangco's modification of the computer records and $4,500,000.00 in costs to reproduce Plaintiff's accounts and data in addition to the $1,220,078.27 transferred to Gotiangco's personal accounts. (*Id.* ¶ 25.) Plaintiff states that it then notified the Underwriters that Plaintiff's losses could be as much as $25,000,000.00. (*Id.* ¶ 26.) Accounting for the $100,000.00 deductible, Chubb paid Plaintiff $1,120,078.27 for the actual amount Gotiangco misappropriated as well as an additional $100,000.00 for the proof of loss KPMG prepared. (*Id.* ¶ 27.) Plaintiff claims that Chubb and Underwriters have failed to properly compensate Plaintiff for its losses attributed to Gotiango's fraud. (*Id.* ¶ 28.) Plaintiff brings two claims of breach of contract, one as to each Defendant for failing to cover the entirety of Plaintiff's $26,250,000.00 loss.

Defendants contend that there is diversity jurisdiction because Plaintiff is diverse from all Defendants and the amount in controversy exceeds $75,000. (*Id.*) As alleged in the Notice of Removal, Defendants assert that the citizenship for all parties is as follows:

3

- Plaintiff is a Virginia corporation with its principal place of business in Henrico County, Virginia.
- Chubb Underwriting Agencies Limited is the managing agent for Lloyd's Syndicate 2488, which issued the primary coverage policy. Chubb Underwriting Agencies Limited is incorporated in the United Kingdom with its principal place of business in London, England. Lloyd's Syndicate 2488 has one member, Chubb Capital Limited, which is a private limited company incorporated in the United Kingdom with its principal place of business in London, England. Chubb European Group Limited, the named Defendant, is now called Chubb European Group SE and is incorporated in France with its principal place of business in Courbevoie, France.
- The Underwriters, who issued the excess coverage policy, consist of nine Names grouped into four Syndicates:
  - QBE Syndicate 1886 is an unincorporated association. Its sole member is QBE Corporate Limited, a private limited company. QBE Corporate Limited is incorporated in England and Wales with its principal place of business in London, England.
  - Probitas Syndicate 1492 is an unincorporated association. There are six members of this Syndicate: (1) OCIL Limited; (2) Probitas Corporate Capital Limited; (3) GIC Re, India, Corporate Member Limited; (4) IAT CCM Limited; (5) Iris Balanced Corporate Member Limited; and (6) Iris Low Volatility Plus Corporate Member Limited. These entities are all

4

> private limited companies organized under the laws of the United Kingdom with their principal places of business in the United Kingdom.
>
> o Liberty Syndicate 4472 is an unincorporated association. Its sole member is Liberty Corporate Capital Limited. Liberty Corporate Capital Limited is a private limited company organized under the laws of the United Kingdom with its principal place of business in London, England.
>
> o XL Syndicate 2003 is an unincorporated association. Its sole member is Caitlin Syndicate Limited. Caitlin Syndicate Limited is a private limited company organized under the laws of England with its principal place of business in London, England.

Plaintiff contends that Defendants insufficiently pled diversity jurisdiction as the Notice of Removal does not properly list all the relevant parties and corresponding citizenship. (ECF No. 9 at 1.) Specifically, Plaintiff argues that Defendants have not included all the Names underwriting the policy. (*Id.* at 2.) Moreover, as the Names comprising the syndicates are U.K. private limited companies, Plaintiff also asserts that a U.K. private limited company should not be treated as a corporation for diversity purposes, but rather as an unincorporated association. (ECF No. 19 at 11–6.) Accordingly, Plaintiff believes that Defendants must list all the stakeholders for each Name. (*Id.*) Defendants, however, assert that the Names listed comprise all the Names associated with the syndicates and that no other Name assisted in underwriting the policies. (ECF No. 18 at 1.) Defendants also argue that U.K. private limited companies are like corporations for diversity purposes and, thus, Defendants only need to allege the

principal place of business and place of incorporation for each Name. (*Id.* at 6.)

## II. STANDARD OF REVIEW

As the removing parties, Defendants bear the burden of demonstrating that this Court has subject matter jurisdiction. *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016). Removing proceedings from state court raises significant federalism concerns; accordingly, "[i]f federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). In contrast to state courts of general jurisdiction, "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotations and citations omitted). In determining whether removal is proper, federal courts must be "sensitive to the delicate nature of federal-State relations [and] must take care not to assume jurisdiction of a case or controversy that belongs exclusively before a State tribunal." *Thompson v. Gillen*, 491 F. Supp. 24, 27 (E.D. Va. 1980). "[C]ourts may consider affidavits and other extrinsic information to determine whether subject matter jurisdiction exists." *Saval v. BL Ltd.*, 710 F.2d 1027, 1029 n.2 (4th Cir. 1983).

This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Diversity must be complete "such that the state of citizenship of each plaintiff must be different from that of each defendant" at the time an action commences. *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). This holds true for

when a citizen of a foreign state is a party to an action. *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120–21 (4th Cir. 2004) (holding that non-diverse state citizenship or alienage on two sides of a dispute destroys diversity).

The amount in controversy is determined when a case is removed to the district court. *See Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989). "[I]f a single plaintiff joins several parties as defendants, the plaintiff may not aggregate the various claims unless the defendants' liability is common, undivided or joint." *Liberty Mut. Fire Ins. Co. v. Hayes*, 122 F.3d 1061 (4th Cir. 1997). When defendants are severally liable, there must be a sufficient amount in controversy alleged to each defendant. *See id.*

### III. ANALYSIS

It is an open question in the United States Court of Appeals for the Fourth Circuit as to how to treat "Certain Underwriters at Lloyd's, London" for diversity purposes. Even so, courts have generally said that, when a plaintiff sues "Certain Underwriters at Lloyd's, London," a court must look to the Names underwriting the policy for diversity purposes. *CNX Gas Co. LLC v. Lloyd's of London, et al.*, 410 F. Supp. 3d 746, 754 (W.D. Pa. 2019) (collecting cases). A question arises when Names are grouped together in syndicates for diversity purposes, particularly in light of *Carden v. Arkoma Assocs.* 494 U.S. 185, 195–96 (1990) (holding that citizenship of a limited partnership is that of all its members). In light of the unique nature of Lloyd's operations, a circuit split developed regarding whether "a Lloyd's syndicate is more like a trust or a limited partnership—in other words, whether only the representative Name's citizenship is

7

relevant (the trust model), or whether the citizenship of all of the Names must be considered (the limited partnership model)." *CNX Gas Co.*, 410 F. Supp. 3d at 754.

The Sixth Circuit first addressed this issue and looked to agency law for guidance. *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994). The court treated the Names that were general members in the syndicate as undisclosed principals and the managing Name who underwrote the policy as the agent. *Id.* at 42. As agents are liable for the acts performed on behalf of undisclosed principals under agency law, the Sixth Circuit reasoned that "[w]hen the defendants elected to sue the underwriters, they elected to sue the agent. The syndicates, as principal, therefore, were no longer liable to the defendants on the contract and, consequently, are not real parties in interest." *Id.* The court found that, as the real party in interest, only the managing underwriter's citizenship was relevant for diversity purposes. *Id.*

The Seventh Circuit rejected this approach, determining that a syndicate should be treated as a limited partnership and not as a trust. *Indiana Gas Co, Inc. v. Home Ins. Co.*, 141 F.3d 314, 319 (7th Cir. 1998). The court concluded that "[s]yndicates are run . . . much like limited partnerships, with a lead member . . . able to transact business without consulting the investors." *Id.* at 316, 319. Therefore, according to the Seventh Circuit, a court must look at all the members of a syndicate to determine diversity. *Id.* at 319; *see also CNX Gas Co.*, 410 F. Supp. 3d at 755 (collecting district court cases where courts treated syndicates as limited partnerships for diversity purposes). The Eleventh Circuit followed the Seventh Circuit's limited partner approach. *Underwriters at Lloyd's,*

*London v. Osting-Schwinn*, 613 F.3d 1079, 1088–90 (11th Cir. 2010) (adopting the limited partner approach when ascertaining the citizenship of Lloyd's syndicates for diversity jurisdiction).

Other circuits have used a mixed approach. These circuits have looked to Sixth Circuit's trust approach solely when the lead underwriter is sued in their individual or representative capacity and is the real party in interest. However, these courts have utilized the Seventh's Circuit limited partner approach when all the underwriters are sued jointly. For example, the Second Circuit held that, while treating Lloyd's syndicates and underwriters as limited partnerships was the better approach for determining citizenship, there are times when only one Name is sued in its individual capacity. *E.R. Squibb & Sons, Inc. v. Accident Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998) (discussing *Layne*, 26 F.3d at 43 and *Indiana Gas*, 141 F.3d at 319). In *E.R. Squibb*, only one Name was a defendant who acted "as a representative underwriter representing certain underwriters at Lloyd's [of] London, being all underwriters who subscribed the policies of insurance issued to the plaintiff." *Id.* at 928. As all Names were jointly and severally liable, the court held that, when one Name is sued in an individual or representative capacity, only the representative Name is relevant for diversity purposes. *Id.* at 938.

The Third and Fifth Circuits have followed the Second Circuit's approach. *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 864 (5th Cir. 2003) ("Having determined that an insured can sue a Name individually, it does not follow that the citizenship of the remaining Names on the Policy who are not parties to the case and are not before the court is relevant to determining whether the parties are completely diverse."); *Chem.*

*Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.*, 177 F.3d 210, 222–23 (3d Cir. 1999) (holding that, as only one underwriter was a defendant and was acting in a representative capacity on behalf of all underwriters, only the representative underwriter's citizenship was relevant for diversity purposes).

While the Fourth Circuit has yet to address this question, other courts in this District have followed the Seventh Circuit's limited partner approach. *Hillen v. Lloyd's, London*, No. 1:18-cv-112, 2018 WL 10501628, *2 (E.D. Va. Mar. 26, 2018). In *Hillen*, an injured professional hockey player sued Lloyd's, London, whose underwriters issued his insurance, for coverage. *Id.* at *1. Relying on *Carden* and *E.R. Squibb*, the court held that the citizenship of Certain Underwriters at Lloyd's "is determined by the citizenship of the subscribing syndicates, and that a syndicate's citizenship is determined by looking to the citizenship of each of the Names who are members of the syndicate." *Id.* at *2 (citing *Carden*, 494 U.S. at 189; *E.R. Squibb*, 160 F.3d at 930).

In the case at bar, unlike *E.R. Squibb* or *Corfield*, there is not one underwriter who is representing all the underwriters to the policies or that was sued alone in its individual capacity. *See Corfield*, 355 F.3d at 864; *E.R. Squibb*, 160 F.3d at 930. Plaintiff has sued all of the underwriters for both policies, mirroring *Indiana Gas* and *Hillen*. *See Indiana Gas*, 141 F.3d at 319; *Hillen*, 2018 WL 10501628, at *2. Accordingly, this Court will follow the approach adopted by five circuits and treat Lloyd's syndicates like limited partnerships. Defendants are required to state the citizenship of each member Name in the syndicate to determine diversity jurisdiction.

Defendants consist of numerous foreign entities based in France or the United

10

Kingdom. Almost all Defendants consist of numerous Lloyd's syndicates comprised of member Names structured as U.K. private limited companies. Defendants allege in the Notice of Removal that those Names are all organized under the laws of the United Kingdom with their principal places of business in the United Kingdom. The parties dispute whether a private limited company should be treated as a corporation or if the citizenship of all the members or stakeholders must be alleged for diversity purposes.

The Supreme Court of the United States has issued little guidance on the question of determining the citizenship of a foreign entity. The Court has held that a foreign business entity is subject to suit in the United States so long as it is a "juridical person." *People of Puerto Rico v. Russell & Co.*, 288 U.S. 476, 480–81 (1933). In *Russell*, the Court held that a Puerto Rican *sociedad en comandita* is a Puerto Rican citizen for diversity purposes. *Id.* As a *sociedad* was formed differently than American business entities, the *sociedad* was simply considered a Puerto Rican citizen. *Id.*

During the ensuing decades, the Seventh Circuit developed a multi-factor test to determine whether a foreign business entity is equivalent to an American corporation for diversity purposes. *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). The test requires a court to evaluate whether the foreign entity has the same or similar characteristics to a corporation, such as if the entity has "perpetual existence, [and is] governed by a Board of Directors, able to issue tradable shares . . . and treated as independent of its equity investors—who are neither taxable on its profits nor liable for its debts." *Id.* Utilizing these factors, the Seventh Circuit concluded that a Bermuda "limited" entity should be treated as a corporation for diversity purposes. *Id.*

11

Recently, the Fourth Circuit addressed this question of determining citizenship of a foreign entity in *Hawkins v. i-TV Digitalis Tavkozlesi zrt.* 935 F.3d 211, 223–25 (4th Cir. 2019). The court considered how to treat a Hungarian business entity for diversity purposes. *Id.* at 226. While the court examined both the Supreme Court's and Seventh Circuit's approaches, the court did not adopt either and expressly left the question open. *Id.* at 224. Although the Fourth Circuit noted that they "might well be inclined to adopt the Seventh Circuit's approach if we were reviewing the issue de novo," the court recognized that comparing foreign entities to American corporations may not always be a perfect match. *Id.* at 224–25.

Plaintiff argues that this Court must adopt the Seventh Circuit's multi-factor test due to the Fourth Circuit's decision in *Hawkins* along with another recent case, *Navy Fed. Credit Union v. LTD Financial Servs., LP*, 972 F.3d 344 (4th Cir. 2020). In *Navy Federal*, the Fourth Circuit noted that "[o]nly in special circumstances—such as when a foreign corporation lacks a clear domestic analogue—may we look to the structure of any entity to determine whether it classifies as a corporation." *Id.* at 354 n.5 (citing *Russell*, 288 U.S. at 479 and *Hawkins*, 935 F.3d at 224–25). Plaintiff contends that such circumstances exist here, and that it is unclear whether a private limited company is more like an LLC or a corporation. Defendants counter that a private limited company has almost universally been treated as a corporation for diversity purposes and this Court should do so as well.

Indeed, many courts do simply state that a U.K. private limited company is treated as an American corporation for diversity purposes. Nearly a dozen courts have presumed

12

a private limited company is sufficiently similar to an American corporation to be treated as such for diversity purposes.[1] Even so, a private limited company is a juridical person, like a corporation, as it has its own legal personality with various registration and reporting requirements. *See Russell*, 288 U.S. at 480–81; Setting *up a Private Limited Company*, START UP LOANS CO. https://www.startuploans-.co.uk/business-advice/what-is-private-limited-company/ (last visited Nov. 12, 2020). Following the lead of many sister courts, the Court finds that a U.K. private limited company is an analog to an American corporation. Thus, Defendants need only to demonstrate the place of incorporation and principal place of business for each Name.

However, if the Court were to apply the Seventh Circuit's test, as Plaintiff argues this Court must, a U.K. private limited company would still be considered similar to an American corporation for diversity jurisdiction. The hallmarks of an American corporation include a formal business structure with board meetings, transferable stocks, no pass-through taxation, and various shareholders who do not assume liability for the corporations' debts or liabilities. *See Lear*, 353 F.3d at 583. A private limited company

---

[1] *E.g., EMR (USA Holdings) v. Goldberg*, 18-cv-7849 (ER), 2019 WL5537878, *14 (S.D.N.Y. Oct. 25, 2019); *SHLD, LLC v. Hall*, No. 15 Civ. 6225 (LLS), 2015 WL 5772261; *2 (S.D.N.Y. Sept. 29, 2015); *Wexler v. Allegion (UK) Ltd.*, 16 Civ. 2252 (ER), 2016 WL 6662267, *3 (Nov. 9, 2016); *Century Metal Recycling Priv. Ltd. v. Dacon Logistics, LLC*, No. 3:13-cv-93 (CSH), 2013 WL 5929816, *3 (D. Conn. Nov. 4, 2013); *Ratacjzak v. Beazley Sols. Ltd.*, No. 13-c-045, 2013 WL 2147543, *1 (E.D. Wis. May 15, 2013); *StormWater Structures, Inc. v. Platipus Anchors, Inc.*, No. H-09-2755, 2010 WL 582554, *1 (S.D. Tex. Feb. 11, 2010); *HFGL Ltd. V. Alex Lyon & Son Sales Managers and Auctioneers, Inc.*, 264 F.R.D. 146, 147 n.2 (D.N.J. 2009); *Primus Telecoms., Inc. v. Toshiba of Eur. Ltd.*, No. 09-cv-10, 2009 WL 3064669, *2 n.2 (E.D. Va. Sept. 22, 2009); *Novae Underwriting, LTD. v. Cunningham Lindsey Claims Mgmt.*, No. 07-C-2008, 2008 WL 4542988, *1 (N.D. Ill. Apr. 1, 2008); *Simon Holdings PLC Grp. of Cos. U.K. v. Klenz*, 878 F. Supp. 210, 211 (M.D. Fla. 1995); *Chok v. S & W Berisford, PLC*, 624 F. Supp. 440, 441–42 (S.D.N.Y 1985).

has all of these features: a separate legal identity with separate liability; at least one director and one secretary; marketable stocks, though they cannot be sold on the public exchange; required annual reports to the Companies House, the United Kingdom's equivalent of a State Corporation Commission; and no pass-through taxation. Companies Act 2006, c. 46, pt. 1 §§ 3–4, 544; *id.* at pt. 2 § 16; L. OF INT'L TRADE §§ 145:4, 145:6, 145:8; 2 GOING GLOBAL § 26:23; *see also Setting up a Private Limited Company, supra.* Even under the Seventh Circuit's approach, a private limited company contains almost all the characteristics of an American corporation. Thus, the Court will treat each private limited company as a corporation for diversity purposes.

Plaintiff alleges that Defendants have not listed all of the Names as there can be many hundreds of Names that form syndicates to underwrite the policy. To support this allegation, Plaintiff states that, not only can there be hundreds of Names, but also that there can be American Names underwriting a policy. As a result, Plaintiff asserts the amount in controversy requirement is also not satisfied due to the potential for additional unknown Names. However, Defendants asserted that all of the Names that underwrote the policy at issue are listed, that there are no additional Names in the syndicates underwriting this policy, and that the amount in controversy requirement as to each Defendant is satisfied.

Conspicuously absent from Plaintiff's briefing is any evidence that any of Defendants' member Names is missing or that any Name is American. Accordingly, the Court finds that Defendants have listed all the Names underwriting Plaintiff's policy. Moreover, as stated in the Notice of Removal, Plaintiff is diverse from Defendants.

Plaintiff is a corporation incorporated in Virginia with its principal place of business in Virginia. Defendants are all foreign entities incorporated and with their principal places of business in either the United Kingdom or France. Therefore, the Court finds that there is complete diversity of citizenship.

Potentially, Defendants here are severally liable as they have allocated risk amongst themselves for the different policies. Thus, the amount in controversy must be sufficient as to each Name. *Osting-Schwinn*, 613 F.3d at 1083 ("[E]ach Name's liability is several and not joint."); *Liberty Mut. Fire Ins. Co.*, 122 F.3d at 1061. Here, the amount in controversy is $26,250,000. Chubb is solely liable for up to $10,000,000.00 under Plaintiff's primary coverage policy, while Underwriters have divided responsibility amongst the syndicates and their member Names for $40,000,000 under the excess coverage policy. Plaintiff has alleged an amount in controversy of $10,000,000.00 as to Chubb, an amount that exceeds the jurisdictional requirement. The $16,250,000.00 in excess of Chubb's coverage falls under Underwriters' excess coverage policy. The risk and amount in controversy allocated per Name is as follows:

| The Underwriters' Division of Risk for the Excess Policy and Amount in Controversy[2] | | | | | |
|---|---|---|---|---|---|
| Syndicate | Syndicate's Allocated Risk | Name | Name's Share of Syndicate's Risk | Name's Share of Total Risk | Amount in Controversy Alleged |
| QBE Syndicate 1866 | 37.50% | QBE Corporate Limited | 100.00% | 37.50% | $6,093,750.00 |

---

[2] The Court has referred to the affidavits and other documentation attached to Defendants' Response to the Motion for Remand (ECF No. 18) to determine the allocation of risk for the Underwriters.

15

| Liberty Syndicate 4472 | 25.00% | Liberty Corporate Capital | 100.00% | 25.00% | $4,062,500.00 |
|---|---|---|---|---|---|
| XL Syndicate 2003 | 12.50% | Caitlin Syndicate Limited | 100.00% | 12.50% | $2,031,250.00 |
| Probitas Syndicate 1492 | 25.00% | OCIL Limited | 5.53% | 1.3825% | $224,656.25 |
| | | Probitas Corporate Capital Limited | 76.36% | 19.09% | $3,102,125.00 |
| | | GIC Re, India Corporate Member Limited | 7.21% | 1.8025% | $292,906.25 |
| | | IAT CCM Limited | 4.00% | 1.00% | $162,500.00 |
| | | Iris Balanced Corporate Member Limited | 3.45% | 0.8625% | $140,156.25 |
| | | Iris Low Volatility Plus Corporate Member Limited | 3.45% | 0.8625% | $140,156.25 |

As shown in the chart above, the amount in controversy is satisfied for the Underwriters because each Name is responsible for more than $75,000. Accordingly, the Court has subject matter jurisdiction.

### IV. CONCLUSION

In sum, the Court finds that there is subject matter jurisdiction as there is complete diversity of citizenship and the amount in controversy exceeds $75,000 as to each Name. Accordingly, the Motion for Remand (ECF No. 8) will be denied.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Nov. 20, 2020
Richmond, Virginia